## Commonwealth v. Hearn

*C. David Krewson,* for Commonwealth.

*Gilbert J. Kraus,* for defendant.

FULLAM, J., June 26, 1964.—Defendant's motion in arrest of judgment requires us to decide whether a prisoner engaged in private employment under the "Work-Release" program is guilty of the crime of prison breach or escape if he absconds, and fails to return to prison when scheduled.

The facts are not in dispute. Defendant, while serving a sentence in the Bucks County Prison for the offenses of burglary, larceny and receiving stolen goods, imposed as of January sessions, 1962, no. 122, was admitted to the work-release program by appropriate order of the sentencing judge, as authorized by the Act of August 13, 1963, P. L. 774, 19 PS §1179.1, et seq. He was employed on the night shift at a service station, commencing on or about April 17, 1964. Pursuant to this arrangement, defendant left prison to go to work on the evening of April 27, 1964. He was scheduled to return to prison at 6:30 a.m. on April 28, 1964,

but failed to do so. He was apprehended in Baltimore, Maryland on May 2, 1964. It appears that defendant had reported for work as scheduled on the night in question, but some time during the night rifled the cash register and departed in an automobile which had been left at the service station for repairs. This car was still in his possession at the time of his subsequent apprehension.

Defendant was indicted under section 309 of the Penal Code, 18 PS §4309, waived jury trial, was found guilty, and thereupon filed the present motion in arrest of judgment. Section 309 of the Penal Code provides that:

"Any person undergoing imprisonment who breaks prison or escapes . . . is guilty of prison breach, a felony . . .

"The word 'imprisonment', as used in this section, means actual confinement in any penal or correctional institution located in this Commonwealth, *or any restraint by lawful authority pursuant to a court order or after conviction of any crime.*" (Italics supplied.)

In our opinion, a prisoner engaged in the work-release program occupies a status which is within the definition of "imprisonment" in the Penal Code provision just quoted. The Act of 1963, supra, authorizing work-release is entitled "An Act authorizing courts to permit certain prisoners to leave jail during reasonable and necessary hours for occupational, scholastic or medical purposes; conferring powers and imposing duties upon courts, county commissioners and sheriffs and other persons in charge of a jail or workhouse."

Section 1 of the act provides:

"Whenever any person has been sentenced to undergo imprisonment in a county jail or workhouse . . . the court, at the time of sentence or at any time thereafter upon application made therefor, may by order· direct the . . . warden or other administrative head of a jail to permit the *prisoner* to leave the jail during necessary

and reasonable hours for the purpose of working at his employment. . . . The order of court may be rescinded or modified at any time with or without notice to the *prisoner*." (Italics supplied.)

Throughout the act, the inmate on work-release is referred to as a "prisoner". Moreover, section 4 of the act, provides:

"The court may by order authorize the sheriff or other person in charge of the jail to whom the prisoner is committed to arrange with another sheriff or other person in charge of a jail for the employment of the prisoner in the other's county and while so employed to be in the other's custody but in other respects to be and continue subject to the commitment."

It seems quite clear from a reading of the Act of 1963 in its entirety that a prisoner engaged in private employment outside the prison is still a prisoner, is still in the custody of the warden, and is still subject to the commitment of sentence; and is therefore subject to "restraint by lawful authority pursuant to a court order or after conviction of any crime," within the meaning of section 309 of the Penal Code.

It is true, as argued by counsel for defendant, that the Act of 1963 provides that "the order of court may be rescinded or modified at any time with or without notice to the prisoner," but it does not follow that such termination of privileges constitutes the only penalty for failing to return when scheduled. On the contrary, we believe the quoted language was inserted in the statute simply to make it clear that an order of court authorizing release on the work-release program does not amount to a modification of the sentence. [If it did, due process would seem to require a hearing before the sentence could be further modified].

The provision in section 5 of the Act of 1963, "The sheriff or other person in charge of a jail may refuse to permit the prisoner to exercise his privilege to leave the jail for a period not to exceed five days for any

breach of discipline or other violation of jail regulations," was undoubtedly included in order to eliminate the necessity of amending the court order whenever it was desired to suspend the work-release privilege for a brief period for minor infractions. Rather than furnishing support for defendant's argument, this section of the statute makes it quite clear that the inmate is still considered a prisoner while on the work-release program, and is still subject to all of the rules and regulations of the prison.

The principal argument of defendant in the present case is that in all other situations in which an inmate is not in actual confinement, the legislature has expressly provided for prosecution for prison breach when it intended such penalties to attach. From the failure to include such express provisions in the 1963 Act, it is argued that a contrary legislative intent must be presumed. Thus, the Act of May 31, 1919, P. L. 356, 61 PS §§81 and 82, which authorizes the transfer of seriously ill prisoners to other institutions where proper medical treatment may be obtained, expressly provides that if any person so removed shall escape, he shall "upon conviction thereof, be guilty of the crime of breach of prison." The Act of May 25, 1907, P. L. 247, 61 PS §§184-192, which authorizes the employment of prisoners outside the prison walls on various public works expressly provides, in section 7:

"If any prisoner, while employed outside of the limits of said jails or workhouses, and while beyond said limits, shall make his escape, or attempt to escape, the prisoner so escaping, or attempting to escape, shall be deemed and taken to have committed an escape or breach of prison, and shall be subject to like penalties as are now provided by law for an escape or breach of prison." (61 PS §191).

The Act of July 17, 1917, P. L. 1036, 61 PS §193, which authorizes the employment of prisoners at agricultural labor on any county or poorhouse farm, pro-

vides that "all inmates so employed shall at all times be amenable to restraint, discipline, and punishment, in the same manner as if they were confined in the proper jail or prison."

The Act of July 11, 1917, P. L. 814, sec. 2, 61 PS §§231-232, since repealed, which authorized the employment of prisoners on State highways, expressly stated:

". . . the intention of this act being that said wardens, sheriffs, and superintendents shall have full custody of said prisoners or inmates at all times, and be responsible for their care and safe-keeping".

On the other hand, the Act of June 4, 1915, P. L. 812, 61 PS §221, et seq., which authorizes the voluntary employment of prisoners in road construction work, does not contain any express provisions on the subject of whether they are still in custody, or whether they would be guilty of escape or prison breach if they should attempt to escape. And the Act of May 8, 1913, P. L. 166, 61 PS §111, which authorizes the lodging of female prisoners outside the penal institution during childbirth is likewise silent on the subject of the inmate's liability for prosecution for prison breach or escape during such period, except perhaps the implication contained in the authorization of expenditures "to guard against her escape."

To the extent that any legislative pattern is discernible from a review of these various enactments, it tends to support the opposite of defendant's present argument. The Act of 1907 is still in effect. In broad terms, it provides for liability for prison breach or escape in the case of any prisoner who escapes or attempts to escape "while employed outside the limits of the said jails or workhouses." In the various other statutes enacted since 1907 providing for other types of employment outside the prison walls, the legislature has never considered it necessary to repeat this provision, but has

54

merely contented itself with making it clear that the inmates were still in custody during their employment. The Act of 1963, while perhaps not so explicit on the question of custody as some of the earlier statutes, follows the same general pattern, and makes it reasonably clear that defendant was still a prisoner and was still in custody during his periods of employment outside the prison walls.

As pointed out in the Commonwealth's brief, the Statutory Construction Act, 46 PS §562, provides that statutes in pari materia shall be construed together and when the Work-Release Act of 1963 is construed together with section 7 of the Act of 1907, supra, there can be no question that defendant was properly charged with and convicted of escape in the present case.

We note also that the appellate courts of California have reached the same conclusion, under a substantially identical work-release statute: People v. Haskins, 177 Cal. App. 2d 84, 2 Cal. Rptr. 34 (1960).

### Order

And now, June 26, 1964, for the reasons set forth in the foregoing opinion, defendant's motion in arrest of judgment is denied and refused. Defendant is directed to be produced for sentence at a time to be fixed by the district attorney.